Mr. Justice Thacher
delivered the opinion of the court.
This is. an appeal from a decree of the superior court of -chancery, dismissing the complainant’s bill in that court.
The complainant, Nancy Quine, claims the whole estate. *163 real and personal, comprising the plantation, with its slaves, stock, &c., upon which Henry Quine resided with her at the time of his death; or, at all events, the one half of the property purchased by said Henry Quine, during his lifetime. The bill of complainant likewise prayed for injunctions to restrain further action in suits at law instituted by the administrator and heirs at law of said Henry Quine, to recover the real and personal property of the said plantation.
These claims of the complainant are based upon a copartnership in the business of planting, which is alleged to have subsisted between the said Nancy and Henry, from the year 1815, with the intermission of a year, up to the year 1838, at which time the said Henry died, coupled with an alleged contract, that the survivor should possess the whole property.
On the other hand, the defendants deny that any such co-partnership ever existed, or, at most, that it extended only to a division of the annual proceeds of the plantation cultivated by said Henry and Nancy; and they deny that any such contract of survivorship ever existed, and moreover insist that if ever any such contract was made, it was void under the statute of frauds.
Previously to the death of Robert, the husband of Nancy Quine, Henry, his brother, had been living with him in the joint cultivation of his plantation. After the death of Robert, Henry continued to cultivate the plantation with the said Nancy until about the year 1821, when he removed to the plantation of one Bullock, with whom he remained for the space of a year, and then returned to the land upon which said Nancy lived. During the period of time before the removal of Henry to said Bullock’s plantation, Nancy contributed towards their joint business one hundred and twenty acres of land, upon which they lived, and two slaves, not over ten years of age, and Henry owned and used in the business, one grown slave and her child. The parties continued to live upon the land of Nancy Quine until about the year 1828, when a tract of land comprising three hundred acres, was purchased' in the name of Henry Quine, to which the parties removed, and *164 there continued to live together as before. This tract of land was subsequently sold, and the said Henry purchased another tract of land, consisting of five hundred and fifty acres, to which they removed, and there continued to reside as before, until the death of said Henry, in 1838.
The parties continued to live together for a space of about fourteen years, and to carry on ihe business of planting upon the three several tracts of land, as before mentioned, employing their several slaves, stock, &c., without there appearing to have been made at any time any definite settlement or division of the proceeds or profits of their labors. And during this period, each pa.rty brought into the business slaves and other property, which are identified as having been derived from other sources than from the profits of the business.
In respect to the evidence adduced, — while there is some reason to excite the probable belief that the parties preserved a division of the property and of the proceeds of their separate labors, — as from the circumstances that the titles to the real estate purchased on two occasions during the time of their dwelling together were executed to Henry individually — their slaves separately given in to the assessor of taxes for assessment, and the stock upon their plantation distinguished by their separate marks, — there is much likewise to establish the opinion that an equal co-partnership in the property purchased by either or both of them, during that time, existed between them — as from the circumstances that they united their property, means, time and labor, from first to last, in the same and no other business or undertaking; from the declarations of Henry at the time of the purchase of the three hundred acre tract of land, that it was purchased for the benefit of Nancy; his declaration, not long before his death, of a design to surrender and abandon the whole plantation to Nancy, and to remove himself to Texas, to which state Nancy’ was also said to be unwilling to accompany him; and his unwillingness to loan money to an applicant for it, except upon a consultation with her, and her approbation.
While these parties commenced their engagement of living and planting in common, with means not very unequal, and *165 while the means added by either subsequently, not derived from the proceeds of the plantation, were not greatly dispropor-tioned, the conclusion of the engagement, by the death of Henry, leaves, if the view of the defendants is to be indulged, the complainant with a very inadequate remuneration and increase for the investment of her property and labor for fourteen years in what was avowedly a prosperous and lucrative business, and heaps upon the representatives of Henry an amount of profit and increase strikingly disproportioned to his investment. This palpable disproportion in the result to the two parties employed in the same business, who must have been equally affected during its continuance by the same good or ill fortune, seems to show unequivocally that the apparent greater success and wealth of the one must have been derived, to some extent, out of the means and toil of the other.
Under all the circumstances of this peculiar and interesting case, it seems to be most conformable to true principles of equity to hold, (and the circumstances seem amply to warrant it,) that there did exist, from the period of the re-union of Nancy and Henry, after his return from Bullock’s plantation, a voluntary and mutual contract to put their land, slaves, stock, labor and skill, &c., into the business of planting, which contract necessarily carried with it a communion of profits, because of the community of stock between them in the labor of the plantation. This constitutes such a copartnership as would entitle Nancy to an equal share of the property, real and personal, purchased by Henry while they were, living and planting together under the contract.
But in regard to the alleged contract that the survivor of the copartnership should take and possess the whole property, that seems from the evidence to have been merely a matter of conversation between them, evincing an intention to make such a contract, and not that such a contract had been positively and definitely agreed upon and made. It was more a matter of contemplation than actual determination. This view of the alleged contract of survivorship is to a great extent confirmed by the circumstance that Nancy sought letters of administration *166 upon the estate of Henry, thereby confessing her own opinion of what was to be the descent of the share which Henry had, in his lifetime, in‘the copartnership estate.
The decree of the chancellor is therefore reversed, the bill and injunction directed to be reinstated, and an account to be taken in accordance with the principles of this opinion and decision.